NEELEMAN LAW GROUP, P.C.
1403 8th Street
Marysville, WA  98270
Telephone: (425) 212-4800
Facsimile: (425) 212-4802

The Honorable Mary Jo Heston
Location: Tacoma

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

In re:                                                    : Case No.: 23-41110
Speed Trans, LLC                                          :
                                                          : DEBTOR'S 3rd  AMENDED PLAN OF
              Debtor(s).                                  : REORGANIZATION
                                                          :
_____ :

## <u>ARTICLE I</u>

## BACKGROUND

**1.01.** <u>**Description and History of the Debtor's Business**</u>

On July 11, 2023, debtor-in-possession, Speed Trans, LLC (hereinafter "Debtor") filed a

voluntary petition for reorganization relief under Sub Chapter V of Chapter 11 of Title 11 of the

United States Code, 11 U.S. C. §§ 101-1330 as amended (the "Bankruptcy Code").

Since 2012, the Debtor has operated freight hauling operations providing transport

services primarily to commercial accounts and businesses located in the state of Washington and

throughout the US based out of its headquarters located at 3701 Pacific Highway East, Tacoma,

WA.   The Company provides services in three main areas of operation including (1) local

freight; (2) regional freight; and (3) long haul, over the road.  Freight customers have included

many well-known brands including Amazon, US Postal Service, FedEx, Costco, Nestle, and

many others.

The goal and mission of the Debtor as an organization, has always been to minimize the

cost of freight dispatch and broker services for truck operators, thereby supporting higher income

for truck operators. This driver focus provided the Debtor a competitive edge in attracting and retaining long-haul drivers even during the severe labor shortage in long-haul trucking which has occurred during the last few years. As a result, Speed Trans LLC grew steadily from inception through early 2019. At its peak, the Debtor grew to dispatch about 100 truck tractors and 150 dry van trailers.

Truck freight transportation is a cyclical industry. Pacific Northwest based trucking operations are particularly reliant on international trade in inbound consumer goods from the far east moving through the Ports of Seattle and Tacoma as well as outbound agricultural commodities. In early 2019, the trade war between the United States and China severely impacted Speed Trans LLC operations however by late 2019, trade had rebounded, and Speed Trans LLC was back on a growth trajectory.

In years 2020 and 2021, with fuel costs reaching record highs, and demand for services also high, to achieve cost savings through greater fuel economy, Speed Trans LLC elected to upgrade and renew its fleet. The Debtor believed that newer trucks would help to attract scarce long-haul truck operators. To accomplish this, Speed Trans LLC took on significant debt mainly with Commercial Credit Group to purchase new trucks.

Currently the trucking industry is in the midst of a cyclical downturn and revenues across the United States generally have decreased substantially Speed Trans, LLC's revenue for 2023 is approximately 50% less than the previous year. This downturn coupled with a surplus of available freight carriers resulting excess capacity has severely impacted bidding on freight driving prices down. All the while, fuel, insurance and other operating costs including labor remain high. In response to above referenced economic challenges, the Debtor has cut operating

expenses and has implemented a strategy of expanding to alternative markets, including but not limited to port related drayage transportation services.

### 1.02   Insiders of the debtor

Insiders of the Debtor are:

      a.      Arashdeep Singh – Managing Member (100%)

### 1.03.   Events Leading to Chapter 11 Filing

The decrease in revenue resulted in the Debtor falling behind on its financial obligations. On June 30, 2023, Commercial Credit Group ("CCG"), as a holder of the secured notes on 74 trucks/trailers, seized 3 of the trucks which are necessary for the continuation of the business. Negotiations between debtor and CCG were not successful and CCG was attempting repossession of additional tractors. The Debtor filed an emergency Chapter 11 bankruptcy on July 11, 2023 to prevent further repossession of the additional tractors/trucks.

### 1.04.   Management of the Debtor Before and During the Bankruptcy

Arashdeep Singh, holder of a 100% member interest in the Debtor, served as Managing Member of the Debtor prior to the petition date and will continue to serve in the same capacity for which he will be compensated pursuant to the terms set forth in Article V below.

### 1.05   Significant Events During the Bankruptcy Case

The Debtor filed a *Motion for Interim Use of Cash Collateral* on July 14, 2023, and an order was entered on July 19, 2023 granting the motion. A final hearing was set for August 4, 2023. On August 1, 2023 this court entered an Order granting *Debtor's Motion for Final Order Authorizing Use of Cash Collateral*. The Debtor filed a *Motion to Reject the Contract with RTS Financial Services, Inc.* on July 21, 2023, which was granted on July 25, 2023 following a hearing on the matter. An *Application to Employ Neeleman Law Group, P.C. as Counsel for the*

*Estate* was filed on September 5, 2023 to allow counsel to represent the Debtor in this proceeding, and an order granting the application was signed on September 6, 2023.

Creditor, Colco, LLC filed a Motion for Order Compelling Rejection of Lease and Granting Relief from the Automatic Stay on September 5, 2023. Debtor objected to the Motion and a hearing was held on September 28, 2023. The motion was denied.

**1.06    Projected Recovery of Avoidable Transfers**

The Debtor is not aware of any preferences or fraudulent conveyances which existed as of the Petition Date. Accordingly, the debtor does not intend to pursue any of these actions.

**1.07    Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets as of the petition date are listed in **Exhibit A.**

The Debtor has filed monthly financial reports for the periods from the Petition Date through August, 2023 and will timely file the report for September, 2023 when it becomes due. Information shown on the monthly reports includes the Debtor's income from all sources and details the Debtor's  monthly expenses. Copies of the monthly reports are available online through the court's electronic filing system and/or may be viewed in the bankruptcy court clerk's office.

**ARTICLE II**

**SUMMARY**

This Plan of Reorganization (the "Plan") under Chapter 11, Subchapter V of the United States Bankruptcy Code (the "Code") proposes to pay creditors of the Debtor in the manner and consistent with the terms contained herein.

This Plan provides for unclassified administrative claims and priority tax claims, four classes of secured claims, one class of unsecured claims, and one class of equity security holders.

Each creditor and equity security holder should refer to Articles III through V of this Plan for information regarding the precise treatment of its claim. Pursuant to 11 USC §1181(b) of the Code, unless the Court orders otherwise, a Disclosure Statement providing further detail as pertaining to background and treatment of claims treatment is **not** required and **will not** be filed and circulated in this case. Accordingly, creditors and equity security holder should rely on the contents of this Plan only in determining whether to accept or reject this Plan's treatment of your claim.

**YOUR RIGHTS MAY BE AFFECTED BY CONFIRMATION OF THIS PLAN. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

<u>**ARTICLE III**</u>

**CLASSIFICATION OF CLAIMS AND INTERESTS**

| **3.01** | <u>Class 1</u> | Secured claim of RTS Financial Service, Inc. |
| **3.02** | <u>Class 2</u> | Secured claim of IPFS Corporation |
| **3.03** | <u>Class 3.</u> | Secured claim of Commercial Credit Group, Inc. |
| **3.04** | <u>Class 4</u> | Secured claim of COLCO, LLC |
| **3.05** | <u>Class 5</u> | All general unsecured claims allowed under § 502 of the U.S. Bankruptcy Code. |
| **3.06** | <u>Class 6</u> | Equity Security Holder – Arashdeep Singh |

# ARTICLE IV

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS

## AND PRIORITY TAX CLAIMS

**4.01** **Unclassified Claims.** Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

**4.02** **Administrative Expense Claims**. Each holder of an administrative expense claim allowed under 11 U.S.C §503 of the Code will be paid pursuant to the Plan treatment as provided in Article V below. Notwithstanding, the treatment of an allowed administrative expense claim will be subject to the provisions of 11 U.S.C 1129(a)(9) in a Consensual Plan and 11 U.S.C. 1191(e) in a Cramdown Plan as defined in Article X herein.

**4.03** **Priority Tax Claims**. Each holder of a priority tax claim will be paid the amount of its allowed claim in full as provide in Article V below.

# ARTICLE V

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**5.01** The Debtor will act as its own Disbursing Agent. Claims and interests shall be treated and paid as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1 – RTS Financial Services, Inc.** | Impaired | The secured claim of RTS Financial Services, Inc. in the total amount of $77,250.00 plus reasonable attorney's fees as provided to Debtor's counsel, secured by personal property of the Debtor as referenced in UCC File No. 2014-352-3872-7 filed on 12/18/14 and as amended on 1/15/20 and 7/9/19 will be paid $3500.00 per month beginning on the 5th day of February, 2024 and continuing until August 2025. Debtor will remit an additional amount by August 5, 2025 sufficient to satisfy any outstanding balance to pay the claim in full. The remainder of the claim has been satisfied in full as stipulated by the parties. |
| **Class 2 – IPFS Corporation** | Impaired | The claim of IPFS will be paid pursuant to the terms and provisions of the stipulation filed on October 18, 2023, Dkt No.117 and attached as Exhibit B and incorporated herein by this reference. |
| **Class 3 - Commercial Credit Group, Inc.** | Impaired | See Exhibit C |
| **Class 4 – COLCO, LLC** | Impaired | The claim of Colco, LLC will be paid pursuant to terms and provisions of the stipulation filed on November 28, 2023, Dkt No. 146 and attached as Exhibit D and incorporated herein by this reference (the "Colco Stipulation"). |
| **Class 5 – General Unsecured Claims** | Impaired | Each holder of an allowed general unsecured claim will be paid a pro rata share of $15,000.00 per month beginning August 5, 2025. Claims will be paid an amount sufficient to return 100% to all general unsecured claims. Interest will accrue at the rate of 5.36% |
| **Class 6 – Claims of Interest of Equity Security Holder – Arashdeep Singh** | Impaired | Arashdeep Singh holds a 100%-member interest in the Debtor which be retained until payments provided for in the Plan are paid in full. |

| | | |
|---|---|---|
| **Unclassified Claim of XTRA Lease, LLC** | Impaired | See Exhibit E |
| **Unclassified Claim of the Internal Revenue Service** | n/a | The unclassified priority claim of the Internal Revenue Service, will be paid monthly payments of $650.00 on the 15th of each month beginning on March, 2024 and continuing thereafter until the claim is paid in full not to exceed 60 months from the petition date. If any amount remains outstanding in February of 2028. Debtor will remit with its March 15, 2028 payment additional funds as necessary to satisfy any outstanding balance in order to pay the claim in full. Nothing herein is intended to permit Debtor to skip monthly payments as they become due, or to prohibit Debtor from fully retiring the claim prior to March of 2028. Interest will accrue at the rate and applicable terms determined under the federal statutory rate. |
| **Unclassified Claim of the Washington State Department of Labor & Industries** | n/a | The unclassified priority claim of the Washington State Department of Labor & Industries will be paid monthly payments of $350.00 on the 15th of each month beginning on March 15, 2024 and continuing thereafter until the claim is paid in full, not to exceed 60 months from the petition date. If any amount remains outstanding in February of 2028, Debtor will remit with its March 15, 2028 payment additional funds as necessary to satisfy any outstanding balance in order to pay the claim in full. Interest will accrue at the rate of 12% per annum. Nothing herein is intended to permit Debtor to skip monthly payments as they become due, or to prohibit Debtor from fully retiring the claim prior to March of 2028. |
| **Unclassified Claim of Washington Employment Security Department** | n/a | The unclassified priority claim of the Washington State Employment Security Department will be paid monthly payments of $200.00 on the 15th of each month beginning on March 15, 2024 and continuing thereafter until the claim is paid in full, not to exceed 60 months from the petition date. If any amount remains outstanding in February of 2028, |

| | | |
|---|---|---|
| | | Debtor will remit with its March 15, 2028 payment additional funds as necessary to satisfy any outstanding balance in order to pay the claim in full. Interest will accrue at the rate of 12% per annum. Nothing herein is intended to permit Debtor to skip monthly payments as they become due, or to prohibit Debtor from fully retiring the claim prior to March of 2028. |
| **Unclassified Claim of Washington Department of Revenue** | n/a | The unclassified priority claim of the Washington State Department of Revenue will be paid monthly payments of $350.00 on the 15th of each month beginning on March 15, 2024 and continuing thereafter until the claim is paid in full, not to exceed 60 months from the petition date. If any amount remains outstanding in February of 2028, Debtor will remit with its March 15, 2028 payment additional funds as necessary to satisfy any outstanding balance in order to pay the claim in full. Interest will accrue at the rate and applicable terms determined under state law. Nothing herein is intended to permit Debtor to skip monthly payments as they become due, or to prohibit Debtor from fully retiring the claim prior to March of 2028. |
| **Unclassified Claim of Trustee Virginia Burdette** | n/a | The allowed administrative claim of Trustee Virginia Burdette, in the estimated amount of $5,000.00 will be paid monthly payments of $500.00 per month on the 15th day of each month beginning on January 15, 2024 and continuing thereafter until the claim is paid in full. |
| **Unclassified Claim of Neeleman Law Group, P.C.** | n/a | The allowed administrative claim of Neeleman Law Group, P.C. will be paid from funds currently held in trust in the amount of $20,000.00 plus monthly payments in the amount of $3,000.00 per month on the 10th of each month beginning February 10, 2024 and continuing until paid in full. |

Case 23-41110-MJH    Doc 165    Filed 12/14/23    Ent. 12/14/23 11:03:28    Pg. 9 of 23

# ARTICLE VI

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

**6.01** **Disputed Claim**. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**6.02** **Delay of Distribution on a Disputed Claim**. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

**6.03** **Settlement of Disputed Claims**. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

# ARTICLE VII

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01** Assumed Executory Contracts and Unexpired Leases.

(a) The Debtor intends to assume, upon the terms set forth below the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan as provided in Article IX:

1. **NEWLANE FINANCE** – GPS System. Debtor will continue to make regular monthly payments pursuant to the agreement.

2. **SAMSARA** – Fleet Management Software. Debtor will continue to make regular monthly payments pursuant to the agreement.

3. **TOM MCLEOD SOFTWARE CORP** – Payment Processing Software. Debtor will continue to make regular monthly payments pursuant to the agreement.

4. **OMNITRACS** – Fleet Management. Debtor will continue to make regular monthly payments pursuant to the agreement.

(b) The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 7.01(a) above, or before the date of the order confirming this Plan, upon the Effective Date of this Plan (including but not limited to Joe and Son's Body Shop, LLC; Colco, LLC; and XTRA Lease, LLC). Unless otherwise provided, a proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VIII

## MEANS FOR IMPLEMENTATION OF THE PLAN

It is anticipated the Debtor's fixed expenses will remain relatively constant moving forward with variable expenses increasing proportionately with revenue.

The Plan will be funded with revenue from the Debtor's operation. Attached hereto as **Exhibit F,** are Debtor's projected Income and Expenses from December, 2023 through September, 2025 as supported by the attached declaration of Arashdeep Singh (**Exhibit G**). It is anticipated both the income and expenses will remain relatively constant through the life of the plan.

Monthly payments will be paid by the Debtor, direct to creditors in the manner referenced in Article V.

During the Plan term, the Debtor will continue with the trucking operation as specified above and anticipates that sufficient net income can be generated from its services to make the payments under this proposed plan.   In the event the regular monthly income is not sufficient to meet the payments under this proposed plan, Debtor will sell trucks and trailers as necessary to meet the monthly obligations.

## ARTICLE IX

## GENERAL PROVISIONS

**9.01**   **Definitions and Rules of Construction**. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

**9.02**   **Effective Date of Plan**.   The Effective Date of this Plan is the date of confirmation.

**9.03**   **Severability**.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**9.04**   **Binding Effect**. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**9.05**   **Captions**.        The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**9.06**   **Controlling Effect**.   Unless a rule of law or procedure is supplied by federal law, including the Code or the Federal Rules of Bankruptcy Procedure), the law of the State of

Washington governs this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE X

### DISCHARGE

**10.01**  Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a Discharge.

**10.02**. **Consensual Plan**  This Plan may be confirmed if it meets all provisions of 11 U.S.C. §1129(a) except for 11 U.S.C. §1129(a)(15) wherein the Plan is accepted by every class of claims and interests under the Plan.  In that event, the Court will grant a Discharge upon confirmation which will discharge the debtor from pre-confirmation debts pursuant to § 1141(d) of the Bankruptcy Code.

**10.03**.  **Cramdown Plan**  This Plan may also be confirmed without the consenting vote of an impaired class so long as it does not discriminate unfairly and is fair and equitable pursuant to 11 U.S.C. §1191(b).  Confirmation of a Cramdown Plan does not discharge any debt provided for in this Plan until the court grants a Discharge on completion of all payments under this Plan.

**10.04**.  Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. The provisions of this Article X are subject to the terms and conditions of the Colco Stipulation, which shall control with respect to the treatment of Colco, LLC's claim.

## ARTICLE XI

## DISBURSING AGENT

**11.01**.  The Debtor will act as the Disbursing Agent in either a Cramdown Plan or as a Consensual Plan, as described in Sections 10.02 and 10.03 herein.  In the event the Plan is confirmed as a Cramdown Plan and quarterly reports are necessary, Neeleman Law Group will assist the Debtor in the filing of post-confirmation reports pursuant to Local Bankruptcy Rule 2015-1(e) until a final decree is entered or the payments provided for in the Plan are completed.

## ARTICLE XII

## OTHER PROVISIONS

**12.01**.  In a Consensual Plan, on the Effective Date of the Plan, all property of the Debtor's estate will vest in the reorganized Debtor pursuant to 11 U.S.C. §1141(b), free and clear of all claims and interests, except that the lien of secured creditors shall be retained until all required payments to the creditors under the Plan are completed.

**12.02**.  Creditors may not take any actions (including, without limitation, lawsuits or other legal actions, levies, attachments, or garnishments) to enforce or collect either pre-confirmation obligations or obligations due under the Plan, so long as the Debtor is not in material default under the Plan.   Provided that the Debtor does not materially default under the Plan, creditors shall be prohibited from taking any enforcement or collection actions or any kind against the Debtor.

**12.03**.  The Bankruptcy Court retains jurisdiction until all Plan payments have been made.

**12.04**.  Any notices, requests, and demands required or permitted to be provided under the Plan, to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Neeleman Law Group
1403 8th Street
Marysville, WA  98270
Email: jennifer@neelemanlaw.com
Telephone: (425) 212-4800
Facsimile: (425) 212-4802

Virginia Burdette
5506 6th Avenue South, Suite 207
Seattle, WA 98108
E-mail: vab@andrewsburdette.com
Telephone: (206) 441-0203
Facsimile: (206) 624-2631

**12.05**.  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

12.06   The terms and conditions of the stipulations attached hereto as Exhibits B and D are incorporated into this Plan.

12.07 As set forth in the Colco Stipulation and Debtor's  Motion for Authorization to Sell Property Free and Clear of Liens Pursuant to 11 U.S.C. 363, and subject to approval of the court, the Debtor hereby conveys, pursuant to Section 363(f) of the Bankruptcy Code, all of its right, title, and interest in the paint booth to Colco, LLC, free and clear from any claims, interests, and encumbrances.

**12.08  Modification of Plan**

The Debtor may modify the Plan at any time before confirmation of the Plan; however, the Court may require re-voting on the Plan. The Debtor may modify the Plan after confirmation in accordance with the provisions stated in 11 U.S.C. §1193(b) if the Plan has been confirmed as a consensual plan, and under 11 U.S.C. §1193(c) if the plan has been confirmed as a non-consensual plan.

## ARTICLE XIII

### DEFAULT

**13.01**  Except as otherwise provided in the Plan, , if the Reorganized Debtor fails to make any payment as referenced in Article V, or to perform any other obligation required under the Plan for more than fifteen (15) days after the time specified in the Plan, the affected creditor may serve upon Debtor and Trustee a written notice of default. The Reorganized Debtor is in material default under the Plan if the debtor fails within thirty (30) days of the service of such notice of default (plus 3 days for mailing) to either: (i) to cure the default or (ii) to obtain from the court an extension of time to cure the default or a determination that no default occurred.   If the Reorganized Debtor remains in material default after the time specified above, creditors may proceed with the remedies as specified below.

**13.02  Priority Claims**. If the Reorganized Debtor fails to make a payment on account of an ALLOWED PRIORITY CLAIM, the holder of such CLAIM shall be entitled to bring an action against the Reorganized Debtor in a court of competent jurisdiction, provided that at least 30-days' notice of intent to bring such action is first given to the Reorganized Debtor , and its undersigned counsel.   Alternatively, if, after 30 days written notice, a default remains uncured, the holder of the ALLOWED PRIORITY CLAIM shall be entitled to recover all amounts due

Case 23-41110-MJH   Doc 165   Filed 12/14/23   Ent. 12/14/23 11:03:28   Pg. 16 of 23

and to become due to it under the PLAN by pursing all remedies, including administrative or judicial, as allowed by state law.

**13.03** **Secured Claims**.

Unless otherwise agreed upon by the parties, if the Reorganized Debtor fails to make a payment to the holder of an ALLOWED SECURED CLAIM, the holder of such CLAIM shall be entitled to proceed in accordance with the underlying agreement or agreements between the CLAIMANT and the Reorganized Debtor provided that at least 30-days' notice of intent to take such action is first given to the Reorganized Debtor, and its undersigned counsel and in the absence of an order prohibiting the holder of the ALLOWED SECURED CLAIM from proceeding with its contractual rights.

**13.04** **Unsecured Claims**. If the Reorganized Debtor fails to make a payment on account of an ALLOWED UNSECURED CLAIM in CLASS 5, or to the ADMINISTRATIVE CLAIM OF XTRA LEASE, LLC paid over time, the holder of such CLAIM shall be entitled to bring an action against the Reorganized Debtor in a court of competent jurisdiction, provided that at least 30-days' notice of intent to bring such action is first given to the Reorganized Debtor, the Trustee, and its undersigned counsel. If such an action is commenced, after default and notice, the holder of the ALLOWED CLAIM shall be entitled to recover all amounts due and to become due to it under the PLAN.

**13.05** **Additional Default Remedies**. If the Plan is confirmed as a Cramdown Plan under 11 U.S.C. § 1191(b) and Debtor defaults on the Plan payment and subsequently fails to cure after the written 30 days' notice as referenced above, Debtor will liquidate non-exempt assets to protect the holders of claims or interests. Debtor may liquidate secured property only with express permission from the lien holder. If the Debtor fails to liquidate its assets within 60

Case 23-41110-MJH    Doc 165    Filed 12/14/23    Ent. 12/14/23 11:03:28    Pg. 17 of 23

days from the date of the notice of default, any party in interest may move to convert or dismiss the case. If the Plan is confirmed consensually under 11 U.S.C. § 1191(a), and the case has closed, any party may move for an order reopening the case and authorizing reappointment of the Trustee pursuant to 11 U.S.C. §§ 1883(c)(1) and 1185. Upon reopening of the case the assets shall re-vest in the Chapter 11 Estate and the reappointed Trustee. After reappointment of the Trustee in the reopened case, the case shall be converted to Chapter 7 for an orderly liquidation of Debtor's assets.

In addition, or in the alternative to the other remedies for default previously set forth above, a creditor or party in interest, including the Trustee, may bring a motion to convert or dismiss the case under 11 U.S.C. § 1112(b), after the PLAN is confirmed, if there is a material default in performing the PLAN, or if there are other grounds for finding cause to convert or dismiss under 11 U.S.C. § 1112(b).

**13.06** The Disbursing Agent will make their record of receipts/disbursements available to any party, as requested. A creditor may notify the Disbursing Agent of any alleged plan default and shall give notice of such claimed default to all parties in interest.

## **ARTICLE XIV**

## **CONFIRMATION REQUIREMENTS AND PROCEDURES**

**14.01** To be confirmable, a Consensual Plan must meet the requirements listed in 11 U.S.C. § 1129(a) not including the contribution of all disposable income requirement of 11 U.S.C § 1129(a)15 of the Bankruptcy Code. These include the requirements that; the Plan must be proposed in good faith (11 U.S.C. §1129(3)); every impaired creditor or equity interest holder has voted to accept the Plan, without counting votes of insiders (11 U.S.C. §1129(8)); and the Plan must be feasible.

**14.02**  To be confirmable, a Cramdown Plan must be fair and equitable and meet the requirements listed in 11 U.S.C. §1129(a) but does not require that every class of claims and interest has accepted the plan (11 U.S.C. §1129(a)(8)) nor that at least one impaired class has accepted the Plan (11 U.S.C 1129(a)(10)), A Cramdown Plan also requires that the Debtor contribute all disposable income to the Plan during the Plan term and that the Plan payment be not less than the net disposable income of the Debtor (11 U.S.C §1191(c)).

**14.03**. **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

The Debtor believes that classes 1 through 5 are impaired and that holders of claims in each of the impaired classes are therefore entitled to vote to accept or reject the Plan.

*1.    What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules

Case 23-41110-MJH    Doc 165    Filed 12/14/23    Ent. 12/14/23 11:03:28    Pg. 19 of 23

the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim was September 5, 2023***

   2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

   3. *Who is **Not** Entitled to Vote*

The holders of the following six types of claims and equity interests are *not* entitled to vote:

  a. holders of claims and equity interests that have been disallowed by an order of the Court;

  b. holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;

  c. holders of claims or equity interests in unimpaired classes;

  d. holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

  e. holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

  f. holders of administrative expense claims.

  ***EVEN IF YOU ARE NOT ENTITLED TO VOTE ON THE PLAN,***

***YOU HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.***

4.      *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity and should cast one ballot for each claim.

**14.04**. **Votes Necessary to Confirm the Plan**

To confirm a Consensual Plan all impaired classes must have voted to accept the Plan., If all impaired classes have not voted to accept the Plan, a plan may still be confirmed by a cram down of non-accepting classes, as discussed later in Section 14.04 [2].

1.      *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.      *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm a Cramdown Plan if the Plan meets the requirements referenced in Section 14.02 above.  The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except for those requirements referenced in Section 14.02 above does not discriminate unfairly and is fair and equitable toward each impaired class that has not voted to accept the Plan (11 U.S.C. §1191(b)).

*YOU SHOULD CONSULT YOUR OWN ATTORNEY IF A CRAMDOWN CONFIRMATION WILL AFFECT YOUR CLAIM OR EQUITY INTEREST, AS THE VARIATIONS ON THIS GENERAL RULE ARE NUMEROUS AND COMPLEX.*

### 14.05 Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders **who do not accept the Plan** will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached as **Exhibit H**.

### 14.06. Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1. *Ability to Initially Fund Plan*

The Debtor anticipates having sufficient funds on hand to begin making payments on December 15, 2023, as proposed in Article V.

2. *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Debtor projects that it will have a sufficient income stream from operations to make the proposed to complete the Plan.

*YOU SHOULD CONSULT WITH YOUR ACCOUNTANT OR OTHER FINANCIAL ADVISOR
IF YOU HAVE ANY QUESTIONS PERTAINING
TO ALL REPRESENTATIONS AND PROJECTIONS CONTAINED HEREIN.*

Dated this 14th day of December , 2023

Respectfully submitted,

_/s/ Arashdeep Singh _____
By Arashdeep Singh
Speed Trans, LLC
Debtor-in-possession

NEELEMAN LAW GROUP, P.C.

_/s/ Jennifer L. Neeleman_
Jennifer L. Neeleman
Attorney for Speed Trans, LLC